## JAMES B. TITMAN

*v.*

## JOHN T. RIKER et al.

A deed for an undivided part of lands made by a special guardian of the infant owners thereof, without the approval of the chancellor, as required by *Rev. p. 482 § 4,* cannot, on a bill for partition of the premises, prevail against a subsequent grantee of such owners who claims under a deed executed by them after they had attained full age.

Bill for partition, and if that be impracticable, for a sale.

*Mr. L. Van Blarcom,* for complainant.

*Mr. M. Rosenkranz,* for defendant Riker.

BIRD, V. C.

The complainant claims six-sevenths of the premises, admitting that Riker is entitled to one-seventh, while Riker claims three-sevenths, admitting that Titman is entitled to four. Then it appears that I am to determine whether Titman or Riker is entitled to the two-sevenths in dispute.

Riker claims under proceedings in the court of chancery in 1865, under which one Washer was appointed a special guardian of two of the infant heirs-at-law of one Reed, and directed to sell their interest in these lands. He sold their interests to the defendant Riker and made a deed therefor and delivered it to Riker, which Riker had recorded. But Washer, the special guardian, never reported said sale to the court, nor was it ever confirmed, nor did the court in any manner ever direct or empower said guardian to make and deliver a deed for said premises. It is said that these omissions are fatal defects in Riker's title. And as the case stands before me it would seem that Titman has the advantage, how hard soever it may seem to Riker, since he paid the purchase price for the land and had his deed recorded. There seems to be no escaping this conclusion. The special guardian had no

power to make such deed, and Riker, the purchaser, was bound to know it, he, having become the purchaser, became thereby a party to the proceedings, and he had a right to be heard upon questions affecting his interests in the subject matter. He could have compelled Washer to report the sale, and had the court perfect his title.

The sale was a judicial sale. It was, in the eye of the law, made by the court. The statute expressly provides that "the chancellor may direct a sale or other disposition of such lands or term to be made by the guardian or guardians, in such way and manner and with such restrictions as shall be deemed expedient," and further provides that when made in good faith and confirmed, as thereinafter mentioned, it shall be valid and effectual. The next section provides that all such sales shall be reported on oath to the chancellor, "to be approved by him before a conveyance shall be made." *Rev. tit. "Sale of Infants' Lands" p. 482 § 4.* The statute seems to be peremptory. I can conceive of no method by which the court can either disregard or avoid it. If, in dealing with the rights of infants, a guardian may thus, in one particular, take the law in his own hands, and assume the high prerogative assigned to the court only by the law-making power, then he may in every other. And the same remark is applicable to the purchaser. If he accepts title under such circumstances he does it at his peril and with every means at hand for the fullest information. Like any prudent man would do, it was only necessary for him to ask for the authority of the vendor (the special guardian) to make the sale and execute the deed. To do less than this was the merest presumption, and that presumption has satisfied him until this day (for over twenty years), during which long period he has not asked the aid of this court to have his title completed and confirmed, nor does he now. Whatever equities there may be in the case, the court is powerless as the pleadings stand. The court cannot encourage such palpable violations of statutory requirements. *Wortman v. Skinner, 1 Beas. 358; Jackson v. Todd, 1 Dutch. 121; Todd v. Philhower, 4 Zab. 796; Stryker v. Vanderbilt, 3 Dutch. 68;*

*Larason* v. *Lambert, 1 Gr. 182 ;* see, also, *Rorer on Jud. Sales* §§ *1, 4, 5, 7, 16, 17.*

The special guardian is the agent of the court and can take no lawful step without authority from his principal. And how to get that authority and the extent of it are most particularly named in the statute which is the foundation of the whole proceeding.

I must conclude, then, that Riker cannot claim the two-sevenths which Washer pretended to convey. Titman took title to one of those sevenths in 1866 and to the other in 1870, when the owners were of age. It is said that he took with knowledge and without value. As I have intimated, the case has not been so framed as to enable the court to deal with these questions, supposing it were possible to make such a case.

I think there should be a sale of these lands, because, in my judgment, Riker, who insists on a partition, has rendered it quite impossible to make a fair and equal partition. He himself is responsible for the present situation which leaves the court in embarrassment at every turn in its effort to do that which is the right of every tenant in common, under ordinary circumstances. This condition he has produced by cutting and removing large quantities of timber from certain portions of the land, thereby materially destroying the evidences of the value of one portion as compared with another. It may be said that this difficulty may be overcome by charging Riker with the value of the timber cut and taken from a given quantity of land and directing commissioners to assign to him such quantity, the same being equal to his proportion of the whole.

This would be practicable were there any degree of certainty in the testimony as to the true value of the timber removed, compared with that which remains. From the best judgment I can give the case, there is so strong a likelihood of injustice resulting to the complainant from a division that I cannot see my way clear to advise it.

I think the defendant should be charged with one thousand three hundred and thirty ties, and not one thousand five hundred and thirty, since, under the proof, if he sold the additional two

Titman *v.* Riker.

hundred, he did so over six years before this bill was filed, in which case the statute of limitations, I think, applies. *Wood on Lim. p. 337 § 169.*

He should be charged with twenty-two cords of wood
 sold to Falk, at seventy-five cents. ................$16 50
Five years' interest................................ 4 95
Sold to others fourteen cords, at seventy-five cents........ 10 50
Interest for five years.............................. 3 15
Sold to Sherman ten cords, at seventy-five cents.......... 7 50
Sold ten cords to Derling, at seventy-five cents........... 7 50
For building timber three hundred and twenty-four feet,
 at five cents................................... 16 20
Interest for fifteen years...........................
Sixteen cords of wood sold Bayles, at seventy-five cents.. 12 00
Interest six years................................ 4 32
Wood sold Gauderman, five cords, at seventy-five cents.. 3 75
Three years' interest............................. 67
Sold Isaac Goble five cords, at seventy-five cents......... 3 75

The last two items due Riker says were never sold nor furnished by him. Although he is entitled to every degree of credit when I consider his age, he being eighty-one, I think the weight of testimony is against him. And then, too, he is chargeable with great laches in not keeping an exact account of the joint property sold by him. As I understand the evidence, one thousand and two ties have been removed from the premises, and there remain thereon three hundred and twenty-eight. He says that he paid nine cents for cutting the ties. Under the evidence this seems to me to be more than the fair value for such work. I don't know any rule that would justify me in allowing over eight cents. This I do with less reluctance, since the person employed by Mr. Riker and to whom he paid the nine cents was his son.

A master will be ordered to make the sale; and when he is directed to make distribution of the proceeds, the proceeds of the sale of wood and ties can be taken into the account unless they are sooner disposed of by the receiver.